# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DANIEL WORDEN,

        Plaintiff,

                                          **Case No. 2:18-cv-624**

     v.                              **JUDGE ALGENON L. MARBLEY**

                                          **Chief Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Daniel Worden, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 10). Plaintiff did not file a Reply. For the reasons that follow, it is **RECOMMENDED** that the Commissioner's non-disability finding be **REVERSED** and the case **REMANDED** under Sentence Four of § 405(g).

## I.    BACKGROUND

On June 27, 2013, Plaintiff protectively filed an application for disability insurance benefits and on March 30, 2015, he filed an application for supplemental security income, alleging that he had been disabled since June 7, 2013. (R. at 11, 243–55.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 141–47, 153–64.) Plaintiff

sought a *de novo* hearing before an administrative law judge. (R. at 165–66.) Administrative

Law Judge ("ALJ") Timothy G. Keller held a hearing on April 18, 2017, at which Plaintiff, who

was represented by counsel, appeared and testified. (R. at 30–55.) On September 5, 2017, the

ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social

Security Act. (R. at 11–23.) On April 26, 2018, the Appeals Council denied Plaintiff's request

for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–3.)

Plaintiff then timely commenced the instant action.

## II.     HEARING TESTIMONY[1]

### A.     Plaintiff's Testimony

Plaintiff testified at the administrative hearing that he is 45 years old and divorced with

two children. (R. at 36.) Plaintiff attended school through the tenth grade when he dropped out

to start working. (R. at 36–37.) Plaintiff started working for Ace Blacktop in 1991 or 1992,

driving a dump truck and trailer and tearing out concrete and asphalt driveways, which included

a lot of heavy physical lift work. (R. at 39, 41–42.) In 2011, he was injured on the job and his

friends had to carry him out of the truck. (R. at 37.) Plaintiff has no worker's compensation

claim. (*Id.*) He receives income from Child and Family Services (approximately $115 monthly),

food assistance (approximately $195 monthly), and Medicaid, which pays for his doctor visits

and prescriptions. (R. at 42.)

Plaintiff testified that he had back surgery in 2013 and was told that there was nothing

else they could do for him because he had osteoarthritis. (R. at 35.) Plaintiff previously received

pain management through Gregory M. Figg, M.D.'s office, but the relationship was terminated

---

[1] The Undersigned limits the analysis of the evidence and the administrative decision to the
issues raised in the SOE related to Plaintiff's use of a cane.

after marijuana was detected in Plaintiff's system. (R. at 43–45.) Plaintiff experiences sleep disturbances due to pain even though he takes pain medication. (R. at 45.)

Plaintiff lives with a female friend with whom he is not romantically involved and pays her $115 for a room. (R. at 45–46.) His bedroom is on the second floor of the apartment and he tries to stay up there because walking on the stairs is painful. (R. at 46.) He drives only when necessary and drove to the administrative hearing. (*Id.*) Plaintiff uses a cane at times, testifying as follows:

Q This cane that you walk with, was that ever prescribed by a health care provider?

A Sharon [phonetic], my primary care physician –

Q Nurse practitioner --

A Told me that I should use one because sometimes, my legs get weak.

ALJ: That's not exactly a prescription.

ATTY: Not exactly a prescription, but --

CLMT : It helps. It helps.

ALJ: You need it?

CLMT : Yeah. Today I- - yeah.

(R. at 46–47.)

B.     **Vocational Expert Testimony**

Connie O'Brien testified as a vocational expert ("VE") at the April 18, 2017 administrative hearing. (R. at 51–53.) The ALJ asked the VE whether Plaintiff would be able to return to his previous employment, presuming that Plaintiff was capable of lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; able to sit for six hours out of an eight-hour work day and able to stand and walk for four hours each out of an

eight hour work day; with only occasional climbing of ramps and stairs and never any ladder, rope, or scaffolding; occasional stoop, kneel, crouch, and crawl; no exposure to moving machinery or unprotected heights; only occasional exposure to extreme vibration; retains the ability to understand, remember, and perform simple, repetitive tasks; able to respond appropriately to supervisors and coworkers in a task-oriented setting, with only occasional public contact and occasional interaction with coworkers, and able to adapt to simple changes and avoid hazards in a setting without strict production quotas.  (R. at 51–52.)  The VE testified that Plaintiff would not be able to return to his previous employment.  (R. at 52.)  Presuming the same restrictions, the VE testified that Plaintiff could perform unskilled light work that existed in significant numbers in the regional and national economies, including work as a laundry folder, janitor, and tagger.  (R. at 52.)

### III.    MEDICAL RECORDS

#### A.    Inpatient Hospital Records and Office Treatment Records

On October 6, 2013, Plaintiff underwent back surgery.  (R. at 362–63.)  By November 2013, Plaintiff still had back pain, but his legs were "much better."  (R. at 398.)

In January 2014, Plaintiff reported persistent back pain, which did not surprise his physician "based on the fact that the decompression was really aimed predominantly at his neuropathic radicular symptoms."  (R. at 441.)  However, Plaintiff's straight leg test was negative and his leg pain was minimized.  (*Id*.)

On February 17, 2014, Plaintiff was uncomfortable upon physical examination with limited range of motion of his lumbar spine.  (R. at 437–38.)  He continued to have axial back pain, but straight leg test was negative and Plaintiff could walk without assistance.  (R. at 438.)  A physical examination on March 13, 2014, revealed Plaintiff's discomfort upon exam, with

stooped posture, antalgic gait, and limited lumbar range of motion with facet loading.  (R. at 435–36.)

On May 13, 2014, Plaintiff sat with his waist in a flexed forward position during a physical examination and complained of pain.  (R. at 431.)  However, he did not appear to be in acute distress and ambulated on his own accord without any assistive devices.  (*Id*.)  Upon physical examination on August 5, 2014, Plaintiff had a mildly antalgic gait discomfort with lumbar extension after flexion, and ongoing low back pain but was able to ambulate on his own accord with no assistive devices.  (R. at 429–30.)

Plaintiff attempted multiple multilevel nerve radiofrequency ablations in 2014.  (R. at 427, 433, 439.)  By October 2014, Plaintiff presented to physical examination with a stooped posture and paraspinal muscular tenderness in the lumbar spine, reporting that the most recent procedure was not as helpful.  (R. at 425.)  However, Plaintiff's reflexes were intact and his strength was normal.  (*Id*.)  During a physical examination on November 26, 2014, Plaintiff complained of escalating pain and difficulty sleeping and it was noted that Plaintiff was sitting flexed forward from the lumbar spine during the entire visit.  (R. at 423.)  However, Plaintiff was in no acute distress, not wearing his back brace, and able to ambulate without any assistive devices.  (R. at 424.)  Upon physical examination on December 9, 2014, Plaintiff reported low back pain.  (R. at 449.)

On February 23, 2015, Plaintiff exhibited a significantly stooped posture and antalgic gait.  (R. at 569.)  Extension of the spine was painful, but the straight leg test was negative and his reflexes remained intact.  (*Id*.)  On April 13, 2015, Plaintiff appeared for an office visit with a cane.  (R. at 502, 513.)  However, there were no references to using or appearing with a cane to office visits on April 27, 2015 and May 11, 2015.  (R. at 488, 496.)  On August 13, 2015, while

Plaintiff sat leaning, flexed forward from the lumbar spine due to discomfort it his low back, he was not in acute distress and it was noted that he does not use assistive devices, and able to ambulate on his own accord. (R. at 548.) However, on August 18, 2015, it was noted that Plaintiff ambulated with a cane. (R. at 475.)

On October 27, 2015, it was noted that Plaintiff again ambulated with a cane. (R. at 469.) Upon physical examination on November 3, 2015, Plaintiff sits leaning flexed forward from the lumbar spine, but was able to easily transition without assistance to an upright position and stand fully upright. (R. at 540.) Plaintiff was also able to ambulate on his own accord without assistive devices. (*Id*.) Even though he complained of back pain, Plaintiff reported that he was "doing pretty good overall." (R. at 538.) On December 7, 2015, Plaintiff appeared for an office visit with a cane. (R. at 647.)

Upon two examinations in February 2016, Plaintiff reported back pain and ambulated with a cane. (R. at 636, 640.) During a physical on March 17, 2016, Plaintiff reported low back pain and had positive SI joint compression test on both sides, but was in no acute distress, able to get full flexion in terms of range of motion, and had a negative straight leg raise on both sides. (R. at 573–74.) Plaintiff walked with an antalgic gait and used a walking stick. (*Id*.) Plaintiff used a cane upon examination on May 25, 2016. (R. at 631.) Upon a physical examination on July 22, 2016, Plaintiff reported pain a 4 to 5 out of a scale of 10 and presented with a cane. (R. at 615, 619.) During office visits in August and September 2016, Plaintiff reported pain and ambulated with a cane. (R. at 603, 605, 607, 609–10.) Notes from an appointment on November 17, 2016, revealed that Plaintiff bent forward and used a cane to ambulate. (R. at 598.) On November 22, 2016, Plaintiff reported that he "occasionally gets weak and has to walk with a

cane." (R. at 591.) An examination on the same visit revealed positive straight leg raise on both sides and weakness in the left leg, but normal reflexes in bilateral legs. (R. at 594.)

**B.    State agency review**

On May 21, 2015, Diane Manos, M.D., a state-agency physician, reviewed Plaintiff's medical record. (R. at 90–95.) Dr. Manos opined that Plaintiff could lift, carry, push and pull ten pounds frequently and twenty pounds occasionally; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. (R. at 93–95.) Dr. Manos further opined that Plaintiff could balance without limitation; only occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; and never climb ladders, ropes, and scaffolds. (R. at 94.) Dr. Manos did not recommend any environmental limitations and did not state that Plaintiff required a cane or any other assistive device. (R. at 93–95.) Dr. Manos went on to find that Plaintiff's statements regarding the severity of his symptoms and impact on functioning was partially credible. (R. at 93.) Plaintiff reported that he was in constant pain, could only lift a few pounds, and did not perform household chores. (*Id.*) However, Dr. Manos, noting that while the objective evidence supports degenerative conditions of the spine, some chronic pain, diminished range of motion, and stooped posture, opined that the "[l]imitations are supported but not to the degree alleged by" Plaintiff. (*Id.*)

On September 16, 2015, Angela Bucci, D.O. reviewed the medical record upon reconsideration. (R. at 114–21.) Dr. Bucci agreed with much of Dr. Manos's assessment but, based on additional evidence, recommended a few new additional limitations. (R. at 119–21.) For example, Dr. Bucci opined that Plaintiff could stand and/or walk for four hours (rather than six) hours in an eight-hour work day. (R. at 119.) Dr. Bucci concluded that Plaintiff could balance frequently instead of the unlimited basis opined by Dr. Manos. (R. at 120.) Dr. Bucci

based these restrictions on two pieces of evidence. (R. at 119–21.) First, she considered a MRI of the lumbar spine from January 14, 2014, which revealed facet and ligamentum flavum hypertrophy L4-5 and hypertrophy at L3-4 and L5-S1. (R. at 120.) Second, she considered a record from an office visit with Dr. Figg on February 23, 2015, which reflected that Plaintiff stood with a stooped posture, had an antalgic gait, and complained that extension of the spine was painful, but Plaintiff's reflexes remained intact, strength intact without focal neurological deficit, and negative straight leg test. (R. at 120, 569–70.) Dr. Bucci went on to find that Plaintiff "continues to have pain and it affects his stance and gait" but that his bilateral lower extremity strength, sensation, and reflexes were intact. (R. at 121.)

## IV.    ADMINISTRATIVE DECISION

On September 5, 2017 the ALJ issued his decision. (R. at 11–23.) The ALJ found that Plaintiff met the insured status requirements through December 31, 2016. (R. at 14.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

substantially gainful activity during the period from his alleged onset date of June 7, 2013. (R. at 14.)

At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status post-surgery, and depression. (R. at 14.)

At step three of the sequential process, the ALJ concluded that that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14–16.) At step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and walk for four hours of an eight hour workday and is able to occasionally climb ramps and stairs and no climbing of ladders, ropes and scaffolds. He can frequently balance, and occasionally stoop, kneel, crouch and crawl. He can face no exposure to moving machinery or unprotected heights and only occasional exposure to extreme vibration. He retains the ability to understand, remember and carry out simple, repetitive tasks, and respond to co-workers and supervisors in a task-oriented setting with only occasional public contact and only occasional contact with co-workers. He can adapt to simple changes, and avoid hazards in a setting without strict production quotas.

(R. at 16.) In reaching this determination, the ALJ specifically considered that Plaintiff presented at the hearing with a cane that his treating nurse practitioner advised him to use. (R. at 17.) The ALJ also considered that while not every physical and mental exam was normal, "multiple exams were normal and the claimant did not always present with a cane or evince decreased range of motion in his back. There is no evidence that his cane was prescribed and its usage appears more occasional and situational rather than constant." (*Id.*) The ALJ went on to note that Plaintiff's "pain, fatigue, reduced ranges of motion, positive clinical testing, stooped gait, sometime need for a cane, and overall reduced function limit him to light work." (R. at 20.) The ALJ accorded "significant weight" to the opinions of the state agency examiners,

particularly the reconsideration opinions. (*Id*.) The ALJ found that these opinions "are well supported by a range of physical exams and imaging studies as well as the claimant's on and off need to use a cane." (*Id*.) Finally, the ALJ noted that these physicians have knowledge of agency standards and definitions. (*Id*.)

The ALJ determined that Plaintiff is unable perform any past relevant work. (R. at 21.) However, relying on the VE's testimony, the ALJ determined that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 21–22.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 22–23.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances one contention of error. Plaintiff asserts that the ALJ erred by failing to include the use of a cane in his hypothetical question after specifically determining that Plaintiff required the use of a cane "sometimes." (ECF No. 12.) This Court agrees.

"In the Sixth Circuit, a VE's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments." *Mitchell v. Comm'r of Soc. Sec.*, No. 13-cv-01969, 2014 WL 3738270, at *11 (N.D. Ohio July 29, 2014) (citing *Parley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)); *see also Parrish v. Berryhill*, No. 1:16-cv-1880, 2017 WL 2728394, at *10 (N.D. Ohio June 8, 2017) ("Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments.") (citing *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir. 2005)), *adopted by* 2017 WL 2720332 (N.D. Ohio June 23, 2017). Nevertheless, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or

her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citing *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)). Accordingly, it is "well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact" into a hypothetical question. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 250 (6th Cir. 2016) (finding ALJ's hypothetical questions to the vocational expert "fairly portrayed" the claimant's limitations as supported by the objective evidence and that "the ALJ was under no obligation to include" limitations that he found not credible in such hypotheticals); *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 494 (6th Cir. 2016) (rejecting contention that the ALJ erred by relying on VE testimony given in response to hypothetical that did not incorporate all of claimant's limitations "because the ALJ's hypothetical question incorporated all of the functional limitations that he found to be credible").

In this case, the ALJ acknowledged that not every physical and mental status exam of Plaintiff was normal, but that "multiple exams were normal and the claimant did not always present with a cane or evince decreased range of motion in his back. There is no evidence that his cane was prescribed and its usage appears more occasional and situational rather than constant." (R. at 17.) Nevertheless, the ALJ went on to find that Plaintiff's "pain, fatigue, reduced ranges of motion, positive clinical testing, stooped gait, sometime need for a cane, and overall reduced function limit him to light work." (R. at 20.) The ALJ, in assigning significant weight to the state agency examiners, found that these opinions "are well supported by a range of physical exams and imaging studies as well as the claimant's on and off need to use a cane." (*Id.*) The ALJ therefore found credible Plaintiff's "sometime need for a cane[.]" Despite this

finding, however, the ALJ failed to include any such limitation in his hypotheticals to the VE or in his RFC and failed to explain why he failed to include this credible limitation. (R. at 16–21; 51–53.) Based on this record, the ALJ's omission in this regard is not harmless error and the Undersigned is therefore unable to conclude that the RFC is supported by substantial evidence. *See Casey*, 987 F.2d at 1235; *Williams v. Colvin*, No. 7:13-cv-98, 2014 WL 1513181, at *6 (E.D. Ky. Apr. 16, 2014) ("As the ALJ explicitly found a moderate limitation in concentration, persistence or pace to be credible, and failed to include it in his hypothetical question to the vocational expert, or the RFC, the ALJ's determination was not supported by substantial evidence."); *cf. Watkins v. Comm'r of Soc. Sec.*, No. 1:16-cv-2643, 2017 WL 6419350, at *12 (N.D. Ohio Nov. 22, 2017) (finding that the ALJ erred where the ALJ knew of cane prescription but did not include the use of a cane in her RFC determination or in her questions to the VE and never explained this omission), *adopted by* 2017 WL 6389607 (N.D. Ohio Dec. 14, 2017); *Shultz v. Comm'r of Soc. Sec.*, No. 1:14-cv-1587, 2015 WL 3905065, at *17 (N.D. Ohio June 25, 2015) (finding that "although the Commissioner implies that the ALJ discredited Shultz's need to use a cane (Doc. 18, pp. 18–19), the ALJ did not expressly do so and instead appeared to accept Shultz's testimony as to his need to use a cane" and concluding that "the ALJ was required either to include the use of a cane in his hypothetical to the VE or to explain his reasons for not including such a limitation. The ALJ's failure to do either was error"); *Borgman v. Comm'r of Soc. Sec.*, No. 11-12938, 2012 WL 3542501, at *12 (E.D. Mich. July 9, 2012) (remanding "for a determination of whether Plaintiff's use of a cane for ambulation and balance interfere with his ability to lift and carry up to twenty pounds at a time, and if so whether that precludes an RFC of light work" where, *inter alia*, the ALJ found that Plaintiff could perform a limited range of light work as defined in 20 CFR § 404.1567(b), which requires a claimant to lift and carry up to

twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, and where the ALJ included in the RFC the use of a cane for occasional balancing and assistance in ambulating greater than one block).

The Commissioner, however, contends that Plaintiff's contentions "attempt to turn a stray comment meant to acknowledge Plaintiff's testimony and some medical records showing cane usage, into an official finding of fact[.]" (ECF No. 15 at 10.) The Commissioner goes on to argue that in order to find that Plaintiff needed a cane, the applicable regulations and case authority require Plaintiff to point to a prescription for a cane. (*Id*. at 10–17 (arguing further that the medical records do not reflect such a prescription and that Plaintiff could ambulate without a cane).)

The Commissioner's argument is not well taken. The Undersigned finds that the ALJ's findings previously discussed regarding Plaintiff's need for a cane do not simply acknowledge Plaintiff's testimony but instead reflect the ALJ's conclusion that Plaintiff's "sometime need for a cane" was credible. (R. at 20.) As discussed above, the ALJ must incorporate into a hypothetical question those limitations accepted as credible and failure to do so and explain that omission is error requiring remand. *Casey*, 987 F.2d at 1235; *Williams*, 2014 WL 1513181, at *6; *Watkins*, 2017 WL 6419350, at *12; *Shultz*, 2015 WL 3905065, at *17. Moreover, "even if the Commissioner's arguments would have supported the ALJ's decision," "[t]he Court may neither speculate on the basis of the ALJ's decision nor accept the Commissioner's *post hoc* rationalizations." *Watkins*, 2017 WL 6419350, at *11; *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*,

939 F.2d 361, 367 (6th Cir. 1991)); *Miller v. Comm'r of Soc. Sec.*, No. 1:13-cv-1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) (accepting the Commissioner's attempt to explain this omission would result in the Court "engaging in post hoc rationalization, which is prohibited").

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits.  It is therefore **RECOMMENDED** that the Commissioner's non-disability finding be **REVERSED** and the case **REMANDED** under Sentence Four of § 405(g) for further consideration consistent with the foregoing.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:  June 10, 2019                           *s/ Elizabeth A. Preston Deavers*
                                       ELIZABETH A. PRESTON DEAVERS
                                       CHIEF UNITED STATES MAGISTRATE JUDGE